## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| HOWARD W. COSBY,<br>      Plaintiff, | :<br>:<br>: | CASE NO. 3:19-cv-401 (MPS) |
| v. | :<br>: |  |
| TAWANA, et al.,<br>      Defendants. | :<br>:<br>:<br>: | JULY  27, 2020 |

_____

### RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

On October 18, 2019, the Court stayed all discovery except that related to exhaustion of administrative remedies and afforded the defendants an opportunity to file a motion for summary judgment addressing only exhaustion of administrative remedies.  See ECF No. 67.  The defendants filed their motion on November 18, 2019.  The plaintiff filed his opposition and cross-motion for summary judgment on June 15, 2020.  For the following reasons, the defendants' motion for summary judgment is granted in part and the plaintiff's motion is denied.

I.    Standard of Review

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage,* 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson,* 477 U.S. at 248.  "The same standard

applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II.     Facts

The plaintiff commenced this action on March 15, 2019. Defs.' Local Rule 56(a)1 Statement, ECF No. 75-5 ¶ 1. The claims in this action relate to a seventeen-day period of confinement in restrictive housing at MacDougall-Walker Correctional Institution commencing on December 18, 2018 and concluding on January 3, 2019. *Id.* ¶¶ 2-3. The plaintiff was confined at MacDougall-Walker Correctional Institution when he commenced this action but is

2

no longer confined at that facility. *Id.* ¶ 3. There are five remaining groups of claims: (1) Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims, (2) Eighth Amendment deliberate indifference to medical needs claims relating to two falls, (3) an Eighth Amendment conditions of confinement claim relating to the restrictive housing cell, (4) use of excessive force and failure to intervene claims, and (5) retaliation claims based on complaints about his treatment in restrictive housing. *Id.* ¶ 5.

Department of Correction Administrative Directive 9.6.15 provides that an ADA decision may be appealed by completing form CN 9602 and depositing the form in the Administrative Remedies box within fifteen calendar days from meeting with the Unit ADA Coordinator. *Id.* ¶ 6. The plaintiff agrees this is the final step in a three-step process. Pl.'s Local Rule 56(a)2 Statement, ECF No. 129-2 ¶ 6. He contends, however, that the directives provide no guidance when, as occurred in this case, there is no response to an inmate's written request for reasonable accommodation. *Id.* The defendants have no record of an ADA appeal being filed. ECF No. 75-5 ¶ 7. The plaintiff states that he did exhaust his remedies on the ADA claim by giving his reasonable accommodation request, dated December 20, 2018, and his ADA appeal form, dated December 22, 2018, to custodial staff to place in the Administrative Remedies box. ECF No. 129-2 ¶ 7.

The administrative remedy procedures set forth in Directive 9.6 apply to the Eighth Amendment conditions of confinement and excessive force/failure to intervene claims, the retaliation claim, and the Eighth Amendment deliberate indifference to medical needs claims as that claim applies to custody officers. ECF No. 75-5 ¶ 8. If an inmate is not satisfied with the response to his request for informal resolution, he may file a grievance using form CN 9602 within thirty calendar days from the date of the incident or the discovery of the cause of the

grievance.  *Id.*  There is no record of the plaintiff filing a grievance relating to any of these claims.  *Id.* ¶ 9.  The plaintiff states that he did exhaust these claims and refers the Court to handwritten copies of his grievances.  ECF No. 129-2 ¶ 9.

There are two types of Health Services Reviews for medical claims. ECF No. 75-5 ¶ 10. Review of diagnosis or treatment decisions is obtained by checking the "Diagnosis/Treatment" box on form CN 9602, concisely explaining the inmates' dissatisfaction, and depositing the completed form in the Health Services Remedy/Review box.  *Id.*  Review of a practice or procedure is obtained by checking the "All Other Health Care Issues" box on form CN 9602 and depositing the completed form in the Health Services Remedy/Review box.  *Id.* There is no record of the plaintiff filing a health services review.  *Id.* ¶ 11.  Again, the plaintiff disagrees. ECF No. 129-2 ¶ 11.

III.  <u>Discussion</u>

The defendants move for summary judgment on the ground that the plaintiff did not exhaust his administrative remedies on any of the remaining claims in this action.  In response, the plaintiff has filed a document entitled a cross-motion for summary judgment and opposition to the defendants' motion.

A properly filed motion for summary judgment must include "a document entitled 'Local Rule 56(a)1 Statement of Undisputed Material Facts,' which sets forth, in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3, a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."  D. Conn. L. Civ. R. 56(a)1.  Although the plaintiff received a copy of the local rule with the defendants' motion, he includes only the Local Rule 56(a)2 Statement which he was required to file in opposition to the defendants' motion for summary judgment.  As he was aware of the

requirement but did not file a Local Rule 56(a)1 Statement, the plaintiff's motion is denied.  The Court considers the filing as his opposition to the defendants' motion only.

The Prisoner Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534, U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  Also, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court.  *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out … (so that the agency addresses the issues on the merits) … [and] demands compliance with agency deadlines and other critical procedural rules").  Because "it is the prison's requirements, and not the PLRA that defines the boundaries of proper exhaustion," the exhaustion inquiry requires that courts review the relevant state procedure and the prisoner's grievance to determine whether the prisoner has complied with those procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

An inmate's failure to exhaust administrative remedies is only excusable if the remedies are, in fact, unavailable.  *See Ross v.  Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).  Under the PLRA, grievance procedures are "available" if they are "capable of use to obtain some relief for the action complained of."  *Id.* (citing *Booth*, 532 U.S. at 738).  In *Ross*, the Supreme Court

recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.*; second, the procedure is "so opaque that it becomes, practically speaking, incapable of use," *i.e.*, it is "essentially unknowable," *id.*; and third, the procedure is unavailable "when prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Id.* at 1860. Ultimately, it is the province of the court to determine whether grievance procedures are available in a particular case. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements.").

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)). Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that the administrative remedy procedures were not available to him. *See Jones*, 549 U.S. at 216.

The five remaining groups of claims fall into three categories for exhaustion purposes. The Court considers each category in turn. In opposition to the defendants' motion and in support of his complaint, the plaintiff has submitted handwritten copies of various administrative remedy forms he claims to have submitted. The Court cannot determine on a motion for summary judgment whether the copies were made of documents actually submitted on the stated dates or, as the defendants imply, created to demonstrate an issue of fact regarding

6

exhaustion.  That assessment requires a credibility determination by the factfinder.  For purposes of deciding this motion, the Court assumes that the documents are copies of remedy forms that were submitted and will consider whether the documents demonstrate compliance with the administrative remedy procedures.

The plaintiff states that, because he was confined in the restrictive housing unit, he was not able to deposit any of the forms in the appropriate boxes himself.  He was required to give the forms to custodial staff and rely on them to deposit the forms in the boxes.  Thus, the plaintiff contends that he cannot be held responsible if staff failed to deposit the forms.  Although the plaintiff raised this argument previously, *see* ECF No. 56 ¶ 24, the defendants do not address it in their motion.  As the plaintiff's contention is supported by his sworn declaration, *see* ECF No. 129-1 at 7, the Court assumes for purposes of deciding this motion that the plaintiff could not deposit his administrative remedy forms in the boxes himself but was required to give them to custodial staff.

A.      ADA Appeal

As the plaintiff correctly notes, there are several steps that must be followed before an inmate can filed an ADA appeal.  First, the inmate must make an oral or written request to a staff member for accommodation for his disability.  Department of Correction Administrative Directive 10.19(7)(A), available at portal.ct.gov/DOC/AD/AD-Chapter-10.  The request must be acted on within two business days.  Directive 10.19(7)(B).  If the request is denied, the inmate is informed in writing and can meet with the ADA Coordinator.  The meeting takes place within twenty-four hours and a decision is issued within one week.  If the ADA Coordinator denies the request, the inmate can file an appeal under Directive 9.6(15) within fifteen calendar days from the meeting with the ADA Coordinator.  Directive 10.19(7)(C).  The directive does not provide

any remedy if custody staff do not respond to the request for accommodation.

The plaintiff has submitted a handwritten copy of a request for accommodation dated December 20, 2018.  ECF No. 129-3 at 8.  In the request, the plaintiff stated that he requested his disability aids in a conversation the previous day but had been provided only his walker.  The plaintiff again requested the remainder of his disability aids including orthopedic shoes, a back binder, compression socks, knee braces, wheelchair, and access to a handicap shower.  *Id.*  The plaintiff also has submitted a handwritten copy of his ADA appeal, dated December 22, 2018, in which he states that ADA Captain Hall will not provide his disability aids.  *Id.* at 5-6.

The defendants state that there is no record of the plaintiff filing an ADA appeal. The directive provides, however, that an inmate may file an ADA appeal only after the meeting with the ADA Coordinator, and that meeting can occur only after the inmate receives a written denial of his request for accommodation.  The plaintiff states that he never received a written denial and concedes that he filed the appeal even though it was not in accordance with the procedures set forth in the directive.  The defendants do not argue that the plaintiff failed to request an accommodation as required to initiate the exhaustion process and do not address whether defendant Hall issued a written response to the plaintiff's request for accommodation.  Absent evidence that defendant Hall followed the procedures set forth in the directive, the Court concludes that administrative remedies were not available to the plaintiff on this claim.  The defendants' motion for summary judgment is denied on the ADA and RA claims.

  B. <u>Administrative Remedy Procedures</u>

For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set

forth in 9.6(6).  Thus, the plaintiff's claims related to conditions of confinement, use of excessive

force/failure to intervene, deliberate indifference to medical needs by custody staff, and

retaliation are subject to the Inmate Grievance Procedure set forth in Administrative Directive

9.6(6), available at portal.ct.gov/DOC/AD/AD-Chapter-9.

Each request for administrative remedy must be submitted on a separate form. *See id.* at

9.6(5)(E)(2).  The request and action sought must be stated clearly and simply.  *See id.* at

9.6(5)(E)(3).

An inmate must first attempt to resolve the matter informally.  He may attempt to

verbally resolve the issue with an appropriate staff member or supervisor.  *See id.* at 9.6(6)(A).

If attempts to resolve the matter orally are not effective, the inmate must make a written attempt

using a specific form and send that form to the appropriate staff member.  *See id.*  If an inmate

does not receive a response to the written request within fifteen business days or the inmate is

not satisfied with the response to his request, an inmate may file a Level 1 grievance.  *See id.* at

9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the

occurrence or discovery of the cause of the grievance and should include a copy of the response

to the written request to resolve the matter informally or explain why the response is not

attached.  *See id.*  The Unit Administrator shall respond in writing to the Level 1 grievance

within thirty business days of his or her receipt of the grievance.  *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit

Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner

to Level 2.  *See id.* at 9.6(6)(G), (I) & (K).  The Level 2 appeal of a disposition of a Level 1

grievance must be filed within five calendar days from the inmate's receipt of the decision on the

Level 1 grievance. *See id.* at 9.6(K).  The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K).  The District Administrator is required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator. *See id.* at 9.6(6)(L).  A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.*  A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within thirty-five days of the filing of the Level 2 appeal. *See id.* at 9.6(6)(M).  A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee with a response provided within thirty business days of receipt of the Level 3 appeal. *See id.* at 9.6(6)(L).

The defendants state that there is no record of the plaintiff filing any grievances relating to conditions of confinement, excessive force/failure to intervene, retaliation, or deliberate indifference to medical needs by custodial staff.  In response, the plaintiff states that he filed one grievance during the time he was in the restrictive housing unit, on December 20, 2018, addressing all of these claims.  Pl's Decl., ECF No. 129-1 at 7.  He also states that he followed up with level 2 and 3 appeals. *Id.*

The plaintiff attached to his Complaint handwritten copies of two Inmate Requests, both dated December 20, 2018.  The first, addressed to Counselor Grant contains twelve enumerated

requests and three additional ones.  ECF No. 1 at 25-26.  The second addressed to Warden

Mulligan also contains numerous issues.  ECF No. 1 at 28.  These requests are not in proper form

as each request for administrative remedy must be submitted on a separate form.  *See* Directive

9.6(5)(E)(2).  The plaintiff acknowledged his understanding of this requirement in his notations

on the copy of Directive 9.6(5)(E) he submitted with his opposition papers.  *See* ECF No. 129-3

at 19 ("If I'm asking for more than one thing each goes on separate request.").

The plaintiff also submits a handwritten copy of a Level 2 grievance, dated January 28,

2019, stating that he had not received a response to his December 20, 2018 grievance regarding

custody abuse.  ECF No. 1 at 30 & ECF No. 129-3 at 7.  The Level 2 grievance and his statement

in his declaration show that the plaintiff filed the initial grievance the same day he submitted his

inmate requests.  He did not wait for a response as he was required to do, instead filing the

grievance two days after his arrival in the restrictive housing unit and the same day he filed the

Inmate Requests.  *See* Directive 9.6(6)(C) (Level 1 grievance is filed if no response to Inmate

Request is received within fifteen days or inmate is not satisfied with the response).

Finally, the plaintiff submits a handwritten copy of his Level 3 grievance, dated March 8,

2019, claiming he did not receive a response to the Level 2 grievance regarding custody abuse.

ECF No. 129-3 at 2.  The directives provide that the Level 3 grievance must be filed within

thirty-five days from the filing of the Level 2 grievance.  The plaintiff's Level 3 grievance is

dated thirty-nine days after he filed the Level 2 grievance.  In addition, although correctional

officials had thirty business days to respond to the Level 3 grievance, the plaintiff filed this

action seven calendar days after he filed the Level 3 grievance.

Even assuming that the plaintiff filed the grievances on the dates he indicates, he failed to

comply with the administrative remedy procedures and time limits and, therefore, did not

properly exhaust his administrative remedies on the Eighth Amendment claims for conditions of confinement, excessive force/failure to intervene, and deliberate indifference to medical needs by custodial staff, and his First Amendment retaliation claim.  The defendants' motion for summary judgment is granted on the ground that the plaintiff did not properly exhaust his administrative remedies on the Eighth Amendment claims for conditions of confinement, excessive force/failure to intervene, and deliberate indifference to medical needs by custodial staff, and his First Amendment retaliation claim.

C.    Health Services Review

Health issues are addressed by filing a Health Services Review in accordance with the procedures set forth in Directive 8.9.  *See* Directive 9.6(4)(L).  There are two types of Health Services Review.  The first seeks review of an administrative issue, *i.e.*, a particular practice, procedure, administrative provision or policy, or it may allege improper conduct by a health services provider.  The second seeks review of a diagnosis or treatment, including a decision to provide no treatment.  Directive 8.9(9).  The plaintiff does not indicate which type of Health Services Review he filed.

Prior to filing any Health Services Review, the inmate must seek an informal resolution of his claim by discussing the claim, face to face, with the appropriate staff member or by submitting a written report to a supervisor.  Staff shall respond to the inmate within fifteen days of the receipt of a written request.  *See id.* at 8.9(10).

The medical claims are related to two falls.  The first occurred on December 18, 2018, when the plaintiff fell in his cell injuring his head, back and ankles and losing consciousness. The plaintiff was seen by medical staff that evening and the following day.  The second occurred on December 27, 2018, when he fell on the wet cell floor.

The plaintiff states that he filed one medical grievance while confined in the restrictive housing unit thereby exhausting his administrative remedies on his Eighth Amendment deliberate indifference to medical needs claims directed at health care providers or relating to the delivery of medical services.  Pl.'s Decl., ECF No. 129-1 at 7.  He also filed Level 2 and Level 3 medical grievances.  *Id.*  The copy of the Appeal of Health Services Review form that the plaintiff filed states that he filed the initial grievance on December 20, 2018.  ECF No. 129-3 at 4.  As the only Health Services Review was filed a week before the second fall, the plaintiff did not exhaust his administrative remedies on any claim relating to the second fall.

The plaintiff was required to attempt an informal resolution before filing a Health Services Review.  He does not describe any informal resolution attempts in his declaration or other papers and presents no evidence that he did so.  In addition, he filed the Health Services Review the day after he was treated for the first fall, suggesting that there was not sufficient time for him to have attempted informal resolution.  See Directive 8.9(10)(staff must respond to an inmate request form within 15 days).  Absent evidence that he complied with the requirement to first attempt informal resolution, the plaintiff has not properly exhausted his administrative remedies on the deliberate indifference claim relating to the first fall.  The defendants' motion for summary judgment is granted on the ground that the plaintiff failed to properly exhaust his administrative remedies on the deliberate indifference to medical needs claims.

IV.   Conclusion

The defendants' motion for summary judgment [**ECF No. 75**] is **DENIED** as to the ADA and RA claims and **GRANTED** in all other respects.  The plaintiff's cross-motion for summary judgment [**ECF No. 129**] is **DENIED**.  The case will proceed on the ADA and RA claims only.

The discovery restrictions are lifted.  Discovery on the ADA and RA claims shall be

completed by **October 27, 2020**, and any motions for summary judgment shall be filed by

**November 27, 2020**.

      **SO ORDERED** at Hartford, Connecticut, this 27th day of July 2020.

                                  /s/
                              Michael P. Shea
                              United States District Judge